ED MEEGAN, *Appellant*, V. THE PETTIBONE-GENTRY
COMPANY *et al.*, *Appellees*.

No. 17,218.

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Choice of Remedies by Mortgagee—Replevin—*
*Interplea.* Where the property seized in an attachment ac-
tion is claimed by one holding a mortgage on it, and who is
not a party to the attachment action, such mortgagee has the
option to recover the property in an action of replevin or to
protect and enforce his mortgage lien by interpleading in the
attachment action.

2. ———— *Right of Mortgagee to Intervene.* The fact that a
forthcoming bond was given by a defendant in the attach-
ment action, to whom the property was delivered, which bond
was not signed nor procured to be given by the mortgagee,
will not defeat the right of the mortgagee to intervene in the
attachment proceeding in order to have his interest in the
property determined.

3. ———— *Same.* Nor will the fact that he obtained peaceable
possession of the property from one of the defendants, after
the forthcoming bond was given, prevent a hearing upon his
interplea, which was filed about the same time that possession
was obtained.

Appeal from Osage district court. Opinion filed
October 7, 1911. Affirmed.

*Guthrie, Gamble & Street,* for the appellant.

*J. E. McFadden,* and *O. Q. Claflin,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Pettibone-Gentry Company
was engaged in railroad construction, and on February
7, 1906, it borrowed $10,000 from William George, of
Aurora, Ill., giving four notes of $2500 each, payable in
three, six, nine and twelve months thereafter. To se-
cure these notes to George it executed a chattel mort-
gage on a steam shovel outfit which was then being
used in Osage county, Kansas. The Pettibone-Gentry

Company owed a bank in Aurora, of which George was president, $1500, and also owed $1700 to the party from whom the shovel was purchased. The $10,000 was loaned by George personally, but it was arranged that out of the loan he was to pay the $1500 debt to the Aurora bank and the $1700 debt on the shovel. None of the money was paid when the notes and mortgage were executed, but on February 26, 1906, $5000 was placed in the bank to the credit of the Pettibone-Gentry Company and on May 31, 1906, the balance of it was placed to the company's credit. On March 23, 1906, Ed Meegan, appellant herein, began an action against the Pettibone-Gentry Company, the Gentry Construction Company and Charles C. Gentry to recover about $6000, and at the same time caused an attachment to be levied on the steam shovel in question. The sheriff held possession of the shovel until April 28, 1906, when a forthcoming bond was given which was signed by the Pettibone-Gentry Company, the Lantry-Sharp Contracting Company, the Gentry Construction Company, Charles C. Gentry and the Empire State Surety Company. On the giving of this bond the shovel was delivered to Charles C. Gentry. When George learned of the attachment he employed counsel, and on March 30, 1906, demanded a release of the levy. On September 25, 1906, George obtained peaceable possession of the shovel and shipped it to Ohio, where it was subsequently sold for $6750. On the day after obtaining the shovel the court granted him leave to file an intervening petition in the attachment suit, in which he set out his mortgage lien and asked to have it foreclosed. Meegan challenged the right of George to intervene and the jurisdiction of the court to hear the interpleader, since he had already obtained possession of the property and it had been taken out of the state, but his challenge was overruled. He then answered alleging that the mortgage was fraudulent and that

there was a collusion between George and Gentry in the giving of the bond and the surrender and removal of the property. Before the trial of the interplea, Meegan, having dismissed his action as against the Gentry Construction Company and Charles C. Gentry, obtained a personal judgment against the Pettibone-Gentry Company for $7073.15, and the court postponed a hearing as to the attachment proceeding until a later time.

On November 20, 1908, a trial was had with a jury on the issues presented by the interplea which resulted in favor of George. In answer to special questions the jury found that the loan was actually made by George, that the mortgage was honestly executed and not for the purpose of defrauding creditors. It was adjudged that George held a first lien on the property and it was foreclosed. Meegan moved for an order of the court requiring the sheriff to repossess himself of the property which was surrendered upon the giving of the forthcoming bond, and that it should be sold to satisfy the judgment which he obtained against the Pettibone-Gentry Company, but the motion was denied.

In his appeal Meegan contends that George, having obtained possession of the property, did not need the aid of the court and had no interest or standing to maintain intervention. In section 45 of the code it is expressly provided that "any person claiming property, money, effects or credits attached as the property, money, effects or credits of another, may interplead in the cause," etc., and the term "property" has been held to include the lien of a mortgage. (*Bodwell v. Heaton,* 40 Kan. 36, 18 Pac. 901.) This statutory proceeding gives a claimant of attached property a speedy and effectual remedy without the institution of an independent action. It also tends to prevent multiplicity of actions and to diminish the cost of litigation. George could have brought an action of replevin and had the

validity and superiority of his mortgage lien determined, but the statute gave him the option to try these questions in the attachment action already begun. It is said that George had obtained the property and did not need the assistance of the court to gain possession of it. It is true, he acquired peaceable possession of the property from Gentry, but it was still deemed to be in the custody of the court under the attachment process. Neither the giving of the forthcoming bond nor the filing of the interplea released the attachment. The question whether he had a valid lien on the property when it was seized or whether Meegan had obtained a paramount lien by the attachment was undetermined, and there was no more orderly or efficient way of settling the question than upon the interplea filed by George. The fact that the property had come into the possession of George the day before the interplea was filed did not prevent a trial to determine who had the superior lien and the ultimate right to have the property subjected to the discharge of his lien.

It is contended that the denial of appellant's motion to require the sheriff to repossess himself of the attached property, which had passed out of his hands when the forthcoming bond was given, was material error. His argument is, that, under the terms of the bond, the sureties are liable to him to the extent of the judgment which he recovered and that he had no right of action under the bond until this step had been taken. The court had already determined, in a proper proceeding, that the interpleader had a prior lien on the property and a right to have the proceeds derived from its sale applied in discharge of the lien. There would have been no consistency or reason in taking from him that which he had been rightly awarded in order to give appellant a basis for an action against the sureties on the forthcoming bond. George had not caused the bond to be given and had not signed it and was not con-

cerned as to the liabilities which the sureties on it had assumed. His lien was not affected by the action of the Pettibone-Gentry Company in giving a forthcoming bond to which he was not a party. To hold the contrary would open the way by which a mortgage, or other prior lien, might be defeated through collusion between the attaching creditor and the mortgagor in the procuring and giving of a forthcoming bond. The liability of sureties on the bond is not involved here, and if a liability on the bond exists by reason of its terms and conditions it can hardly be defeated by the refusal of the court to go through the empty form of directing the sheriff to repossess himself of the mortgaged property. Meegan can not be charged with a waiver of his rights or with a lack of diligence in following the property or in testing the validity of the mortgage lien. Having done what he could his rights against the sureties on the bond, if any he has, have not been lost by his negligence. The interpleader, as we have seen, had no connection with the bond, and the sureties on it are not parties to this action and no question affecting their obligation on it can be determined in their absence.

The principal issue tried under the interplea was that the mortgage was fraudulent, but the jury found and the court has held against that claim. The sufficiency of the testimony is challenged but there appears to be enough to uphold the findings. We find no substantial errors in the rulings on the admission of evidence or in the instructions given the jury.

The judgment is affirmed.